UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAMARR FOWLER,
    *Plaintiff,*

v.

DEPARTMENT OF CORRECTION *et al.*,
    *Defendants*.

No. 3:18-cv-01635 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Jamarr Fowler was a prisoner in the custody of the Connecticut Department of Correction (DOC) during the events alleged in his complaint. He alleges that he is hearing impaired and that the DOC and numerous individual prison officials violated his rights under the Americans with Disabilities Act and the Rehabilitation Act, as well as under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Based on my initial review pursuant to 28 U.S.C. § 1915A, I conclude that Fowler's complaint should be served on the DOC and several individual defendants.[1]

**BACKGROUND**

At the times relevant to this complaint, Fowler was incarcerated at Cheshire Correctional Institution. His complaint names as defendants the Department of Correction (DOC) and 14 prison officials in their individual and official capacities: Scott Semple, Karen Martucci, Angel Quiros, Scott Erfe, Mr. Guadarrama, Mr. Vigor, Mr. Watson, Mr. Mazurek, Ms. Verdura, Mr. Wright, Russ Taylor, Mr. Carbone, Mr. Disteffano, and Ms. Peterson.

---

[1] This ruling is without prejudice to the rights of any defendant to move to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. To the extent that Fowler alleges any state claims, the Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants

1

The following allegations from the complaint are accepted as true solely for purposes of the Court's initial review. Fowler is hearing impaired/deaf. He also suffers from severe seizures and asthma. Doc. #1 at 6 (¶ 19). On May 23, 2018, Fowler was transferred to Cheshire CI and housed in the North 3 unit. Defendant Taylor was the North 3 unit manager. *Ibid.* (¶ 20).

During recreation period, inmates were permitted to use the inmate phone system. But when Fowler asked to use the TTY phone, defendants Taylor and Carbone denied his request. Fowler complained to defendants Erfe, Guadarrama, and Vigor about being unable to use the TTY phone, but they ignored his complaints. Fowler then asked his family and friends to call and make complaints to the Commissioner. Although Fowler was permitted to use the TTY phone after they petitioned the Commissioner, he did not receive permission until sixteen days after he was transferred to Cheshire.

Even after Fowler was permitted access to the TTY phone, he was not afforded access equal to that of other inmates using regular inmate phones. Taylor and Carbone ordered that Fowler be able to use the TTY phone on Monday, Thursday, Friday, and Saturday during the first-shift recreation period and on Tuesday, Wednesday, and Sunday during the second-shift recreation period. He was limited to one 30-minute call each day, whereas other inmates could use the inmate phones during both the first- and second-shift recreation periods on Monday, Tuesday, Thursday, Saturday, and Sunday. *Ibid.*

Fowler also asserts that correctional policies require that hearing impaired inmates have access to the TTY phone equivalent to that of hearing inmates—with the exception that additional time be afforded to the hearing impaired inmates for each call because of the time required by the TTY system. He alleges that he was not permitted to use the TTY phone for the time designated by policy. All other inmates at Cheshire were afforded six 15-minute calls per

2

day during their recreation periods, and Fowler's reasonable accommodation plan created by the ADA coordinator stipulated that he be allowed six 30-minute calls using the TTY phone during his recreation periods. Fowler contends that those 30-minute call allotments do not constitute adequate or equivalent access. *Id.* at 7 (¶ 21).

Fowler complained to Erfe about the unequal treatment but his complaints were ignored. He then had his family contact defendant Martucci. Rather than taking action, Martucci merely spoke with Erfe about Fowler's complaints. *Id.* at 8 (¶ 22).

On June 25, 2018, Fowler met with Vigor, Taylor, and Carbone in Vigor's office, where they chastised him for filing complaints and having his family file complaints on his behalf. They then placed him in restrictive housing on administrative detention status pending investigation. *Ibid.* (¶ 23). When Fowler met with defendants Erfe and Guadarrama on June 28, 2018, they "made i[n]nuendos implying" that his restrictive housing placement was a response to his family complaining to the commissioner's office. *Id.* at 9 (¶ 24).

Fowler claims that on July 5, 2018, defendant Verdura violated correctional policy by issuing two disciplinary reports to Fowler for the same act. *Ibid.* (¶ 25). Then on July 9, 2018, Fowler finished serving 14 calendar days on administrative detention status, the maximum, but was not released. Defendants Watson, Peterson, Vigor, Guadarrama and Erfe ordered that he remain in restrictive housing and told him that he would remain in restrictive housing until he entered guilty pleas to both disciplinary charges. Fowler submitted complaints to defendants Semple, Martucci and Quiros but they did nothing. *Id.* at 10 (¶ 26). Fowler entered guilty pleas to halt the "psychological torture and the extreme duress." *Id.* at 10-11 (¶ 27).

Fowler claims that the standard practice at Cheshire is to sentence an inmate who enters a guilty plea to loss of a privilege for 30 days, but that defendant Wright sanctioned him to loss of

3

phone privileges for 45 days for each disciplinary report, for a total of 90 days, at the direction of Erfe, Vigor, Watson, Peterson, and Guadarrama. Fowler believes that this sanction was imposed on him because he was scheduled to be released in 90 days and this sanction would eliminate any requirement that he be provided access to the TTY phone during the remainder of his sentence. The sanction did not start on June 25, 2018, when Fowler entered restrictive housing, but on July 12, 2018. *Id.* at 11 (¶ 28).

Fowler alleges that the conditions in restrictive housing constitute an atypical and significant hardship. His asthma was aggravated by the inability to open the cell window and the clogged vent. Medical staff did not provide his asthma pump for the first 13 days he was in restrictive housing. The cell was filthy. Fowler was forced to sleep on a mattress with minimal cushion. He was not provided shower shoes or personal hygiene products and contracted a foot fungus from showering barefooted. For recreation he was taken to a room only a little larger than his cell. *Id.* at 11-12 (¶ 29). Defendant Mazurek subjected him to a strip search during which he was required "to lock his knee[]s, bend over at the waist & use his hands to spread open his buttocks . . . in front of numerous officers." *Id.* at 20 (¶ 40).

Fowler additionally requires certain preventive measures to protect him from injury during a seizure. One such measure was a cellmate to notify correctional staff if he had a seizure. No preventive measures were afforded while he was in restrictive housing. As a result, Fowler suffered numerous injuries when he experienced seizures in his cell. Defendant Disteffano was aware of and ignored this need. *Id.* at 12 (¶ 30).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss

the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). My initial review here is without prejudice to the rights of any named defendant to file a motion to dismiss under Rule 12(b) if they do not believe that Fowler has alleged plausible grounds for relief.

### *ADA and Rehabilitation Act claims*

Fowler alleges discrimination and retaliation in violation of the ADA and Rehabilitation Act. As an initial matter, I will dismiss these claims insofar as Fowler seeks to assert them against any of the individual defendants. "[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). "Many cases from this and other circuits have held that individuals cannot be held personally liable for damages under the ADA, regardless of which title of the ADA is at issue." *Murray v. Tanea*, 357 F. Supp. 3d

226, 230 (W.D.N.Y. 2019). Moreover, to the extent that Fowler seeks to proceed under the ADA and Rehabilitation Act against any individuals in their official capacities, I will dismiss these official-capacity claims as redundant in light of Fowler's claim against the DOC. *See Currytto v. Doe*, 2019 WL 2062432, at *6 (D. Conn. 2019).

As to Fowler's discrimination claims against the DOC, the Supreme Court has held that Title II of the ADA validly abrogates sovereign immunity and permits a private cause of action for damages against a state or state entity, at least as to conduct that rises to the level of also violating the Constitution. *See United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015) (reserving decision on whether Title II may additionally allow for private cause of action for conduct that does not independently violate the Constitution). A plaintiff may also bring an official capacity suit against a state or its agent under § 504 of the Rehabilitation Act. *See Crosby v. Tawanna,* 2019 WL 1921709, at *5 (D. Conn. 2019).

In order to prevail on a claim under either the ADA or § 504 of the Rehabilitation Act, a plaintiff "must show that 1) he is a qualified individual with a disability; 2) [the defendant] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the defendant's] services, programs, or activities [or that the defendant] otherwise discriminated against him by reason of his disability." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).

Fowler has alleged a plausible discrimination claim under Title II of the ADA and § 504 of the Rehabilitation Act. The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2)(A). In a prior case involving Fowler's alleged mistreatment by DOC, I have ruled that Fowler's "hearing

impairment makes him a qualified individual with a disability." *Fowler v. Dep't of Corr.*, 2017 WL 3401252, at *5 (D. Conn. 2017) (quoting *Valanzuolo v. City of New Haven*, 972 F. Supp. 2d 263, 273 (D. Conn. 2013)).

Fowler alleges that he experienced discrimination because the DOC failed to adequately accommodate his hearing impairment by granting him access to the TTY phone during recreation period. He claims that he requested access to the TTY phone from Taylor and Carbone, but that they denied him and he did not have access to a TTY phone for the first 16 days after he arrived at Cheshire. He further claims that he complained about Taylor and Carbone's conduct to Erfe, Guadarrama, and Vigor, who ignored his complaint. Then, when Fowler's family complained on his behalf to the Commissioner, he was finally granted TTY access. Although Fowler was allotted 30-minute periods to use the TTY phone each day of the week, he was not permitted to use the phone during *both* first and second shift each day. Fowler's discrimination claim for failure to reasonably accommodate his hearing impairment may proceed against the DOC.

Fowler separately claims that the defendants discriminated against him in violation of Title II of the ADA and § 504 of the Rehabilitation Act by failing to reasonably accommodate his asthma and seizure disorders while he was housed in the restrictive housing unit (RHU). He alleges that the cell he was housed in did not have proper ventilation and that he did not have access to his asthma pump. He also states that, because he did not have a cellmate in the RHU, he had no means by which to notify prison officials when he was having a seizure and needed assistance. Because Fowler does not allege that DOC discriminated against him because of his asthma and seizure disorders, he has not alleged plausible grounds for relief as to his alleged mistreatment relating to his asthma and seizure disorders. *See, e.g.*, *Gonzalez v. Maurer*, 2017

7

WL 4531685, at *3 (D. Conn. 2017) (dismissing prisoner's ADA and Rehabilitation Act claims based on denial of eye care, because the prisoner's "complaint is that he has not received treatment for his vision, not that any vision disability prompted any of the defendants to discriminate against or disadvantage him").

Fowler additionally alleges that the DOC and defendants Taylor, Carbone, Erfe, Vigor, Guadarrama, Semple, and Martucci retaliated against him in violation of Title V of the ADA, 42 U.S.C. § 12203(a), and § 504 of the Rehabilitation Act. Title V of the ADA "prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). The same standards apply to a claim of retaliation under § 504 of the Rehabilitation Act as under the ADA. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). To state a retaliation claim under either Act, a plaintiff must establish that: (i) he "was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002) (internal quotation marks omitted).

Fowler claims that defendants Taylor, Carbone, Erfe, Vigor, Guadarrama, Watson, Quiros, Verdura, Wright, Semple, and Martucci retaliated against him when he asserted his rights under the ADA. Fowler claims that Vigor, Taylor, and Carbone were responsible for placing him in the RHU on June 25, 2018. He also alleges that defendant Erfe insinuated in a private meeting with Guadarrama present that he was in RHU because his family called the DOC. He further claims that in July 2018, while he was in RHU, Verdura filed two disciplinary reports against him for a single act (rather than multiple acts that were part of a single incident).

Fowler was confined in the RHU for longer than the maximum 14-day period permitted under correctional guidelines because, he claims, defendants Watson, Peterson, Vigor, Guadarrama, and Wright aimed to pressure him to plead guilty to infractions for which he had two outstanding disciplinary reports. Although he complained to defendants Semple, Quiros, and Martucci, he was not released from the RHU after serving 14 days. He further claims that after he pleaded guilty to the two disciplinary reports, he received sanctions in the form of 45 days of loss of phone privileges, rather than the usual 30 days. At this stage, because Fowler states sufficient facts to allege that DOC officials retaliated against him for asserting his rights under the ADA, and because I am allowing Fowler's Title II claim to proceed against the DOC, I will allow his Title V claim to proceed against the DOC. *See Currytto*, 2019 WL 2062432, at *8.

### *Constitutional claims against DOC and against individuals in official capacity*

As a threshold matter, I will dismiss Fowler's § 1983 claims against the DOC because it is not a "person" within the meaning of § 1983, "and thus may not be sued pursuant to this statute regardless of whether a state has waived its sovereign immunity." *Smith v. Conn. Dep't of Corr.*, 2014 WL 3824357, at *6 (D. Conn. 2014). I will also dismiss Fowler's § 1983 claims for money damages against all defendants in their official capacities because "state officials sued in their official capacities under § 1983 are immune from suit for damages pursuant to the Eleventh Amendment." *Currytto*, 2019 WL 2062432, at *4 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)).

### *First Amendment retaliation*

The First Amendment protects prison inmates from being subject to retaliation on the basis of an inmate's filing of a lawsuit, lodging a grievance, or engaging in other protected free speech activity. In order to establish a claim for unlawful retaliation under the First Amendment,

9

a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). A plaintiff must prove that he suffered an adverse action of sufficient magnitude that it would deter a similarly situated person of ordinary firmness from exercising his or her right to speech. *See Burns*, 890 F.3d at 93-94; *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). The Second Circuit, however, has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan*, 794 F.3d at 295 (internal quotations omitted).

Fowler alleges that defendants retaliated against him after his family contacted the Department of Correction about the TTY phone issue. Fowler claims that on July 5, 2018, Verdura "falsified" two disciplinary reports against him based on a single allegation against him. He also claims that he was confined to the RHU for longer than the maximum 14-day period as a result of the two disciplinary reports, that he was pressured into signing a guilty plea to be released from the RHU, and that after he exited the RHU he was subjected to 45 days of sanctions rather than the usual 30 days.

Viewing the facts in the light most favorable to Fowler, after he and his family engaged in the constitutionally protected act of making grievances to DOC officials, he was subjected to a cascade of disciplinary actions that resulted in his ultimately losing phone access until he was released. I will therefore allow Fowler's claims to proceed against the following defendants who Fowler alleges were personally involved in taking disciplinary action against him because of his

10

complaints: Vigor, Taylor, Carbone, Erfe, Guadarrama, Watson, Peterson, Verdura and Wright. Doc. #1 at 8-10 (¶¶ 23-25, 28); *Lexis v. Bellemare*, 2019 WL 1596571, at *5-*6 (D. Conn. 2019).

Fowler also alleges First Amendment retaliation claims against defendants Semple, Quiros, and Martucci, who did not initially place him in the RHU but whose failures to respond to his complaints kept him in the RHU past the 14-day maximum. District courts in this Circuit are divided on the issue of whether an official's review and denial of a grievance constitutes personal involvement in an underlying unconstitutional act. *See Young v. Choinski*, 15 F. Supp. 3d 172, 191 (D. Conn. 2014) (collecting cases). Because the law is not clearly established that the individual defendants were required to respond to his complaints as Fowler alleges, defendants Semple, Quiros, and Martucci are entitled to qualified immunity from Fowler's retaliation claim against them. *See Hayes v. Santiago*, 2018 WL 5456494, at *3 (D. Conn. 2018).

*Due process*

Fowler alleges that various defendants violated his rights under the Due Process Clause of the Fourteenth Amendment. In various parts of his complaint he states that defendants Guadarrama, Semple, Martucci, Vigor, Erfe, Quiros, Wright, Peterson, and Watson failed to respond to his grievances at all or in the manner he would have preferred.

"It is well-established that inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[ ] not give rise to a cognizable § 1983 claim." *Solek v. Naqvi*, 2016 WL 7427213, at *3 (D. Conn. 2016) (internal quotation marks and citations omitted). Accordingly, I will dismiss Fowler's due process claim for failure of defendants to respond to grievances.

*Equal protection*

The Supreme Court has recognized that "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Because disability status is not a suspect classification for purposes of the Equal Protection Clause, any discrimination by prison officials against Fowler is subject to review only for whether prison officials had a rational basis to do so. *See Chick v. Cty. of Suffolk*, 546 F. App'x 58, 60 (2d Cir. 2013); *Marcello v. Currey*, 364 F. Supp. 3d 155, 158-59 (D. Conn. 2019).

Fowler claims that defendants Taylor and Carbone treated him unequally because of his disability. First, Fowler claims that he was allowed access to the TTY phone for 30 minutes at a time, but only during first shift on Monday, Thursday, Friday, and Saturday or during second shift on Tuesday, Wednesday, and Sunday. This policy, which he claims Taylor and Carbone "created," varied from the norm because hearing inmates were allowed to use the phone during both the first and second shifts on Monday, Tuesday, Thursday, Saturday, and Sunday. Because the present record does not disclose a rational basis for defendants to have treated Fowler differently than other inmates with respect to his telephone access, I will for now allow Fowler's Equal Protection claim to proceed. *Cf. Fowler v. Dep't of Corr.,* 2019 WL 1025243, at *7 (D. Conn. 2019) (granting summary judgment against Fowler for similar claim arising from his incarceration at different DOC facility in light of record showing rational basis for officials' actions with respect to Fowler's alleged hearing impairments).

*Deliberate indifference to serious medical needs*

The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 492 U.S. 97, 104 (1976). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—that the prisoner's medical need was sufficiently serious (*i.e.*, that the prisoner suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain). *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Second, there is a subjective requirement: that the defendant have acted recklessly (*i.e.*, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action). *See Spavone*, 719 F.3d at 138.

Fowler alleges that Disteffano showed deliberate indifference to his medical needs on two occasions. First, he alleges that Disteffano did not allow Fowler to be placed at Bridgeport Correctional Institution where Fowler would have had access to 24-hour medical care (unavailable at Cheshire CI). But Fowler does not allege how Disteffano should be responsible for any general shortcoming in medical care at Cheshire CI. Second, Fowler alleges that Disteffano required him to spend more than 14 days in the RHU without a cellmate despite knowing that Fowler needed a cellmate to accommodate his seizure disorder. But this claim presupposes a non-existent duty of a cellmate to assist another cellmate in the event of a seizure, and therefore this claim does not allege plausible grounds for a finding of Disteffano's deliberate indifference to Fowler's serious medical needs. Accordingly, I will dismiss Fowler's claim against Disteffano for deliberate indifference to his serious medical needs.

*Unreasonable strip search*

Fowler alleges that Mazurek violated his rights by subjecting him to a strip search. Doc. #1 at 20 (¶ 40). A prisoner's claim that he has been subject to a strip search may implicate both the Fourth Amendment right to be free from an unreasonable search and seizure and the Eighth Amendment right to be free from cruel and unusual punishment. *See Harris v. Miller*, 818 F.3d 49, 56-65 (2d Cir. 2016) (*per curiam* ). For purposes of a Fourth Amendment claim, a court should consider whether the inmate has exhibited an actual, subjective expectation of bodily privacy and whether prison officials had sufficient justification to intrude on the inmate's privacy in the manner they did. *Id.* at 57, 62-63 (factors to consider include the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted). For purposes of an Eighth Amendment claim, a court should consider if a strip search was done maliciously and sadistically, or if it was done for invidious reasons of intimidation, harassment, or embarrassment. *See id.* at 65; *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) (*per curiam* ).

Viewing the alleged facts in the light most favorable to Fowler, he was forced to submit to a strip search without any justification and in order to humiliate him. *See Dixon v. Santiago*, 2015 WL 9582729, at *3 (D. Conn. 2015). Accordingly, I will allow his Fourth Amendment and Eighth Amendment strip search claims against Mazurek to proceed.

## Conclusion

For the reasons set forth above, the Court allows the following claims to proceed: (1) Fowler's claims for ADA and Rehabilitation Act discrimination and retaliation may proceed against the Department of Correction; (2) Fowler's individual-capacity claims for First Amendment retaliation may proceed against defendants Vigor, Taylor, Carbone, Erfe,

Guadarrama, Watson, Peterson, Verdura and Wright; (3) Fowler's individual-capacity claims for discrimination in violation of the Equal Protection Clause may proceed against Taylor and Carbone; (4) Fowler's individual-capacity claim for an unreasonable strip search in violation of the Fourth and Eighth Amendments may proceed against Mazurek. All other claims and defendants are dismissed pursuant to 28 U.S.C. § 1915A(b).

The Court enters the following orders:

(1)     **The Clerk shall** verify the current work addresses of defendants Vigor, Taylor, Carbone, Erfe, Guadarrama, Watson, Peterson, Verdura, Wright, and Mazurek, mail a waiver of service of process request packet to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendant Department of Correction, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     **The Clerk shall** send plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose

15

to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

It is so ordered.

Dated at New Haven this 20th day of May 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge